## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| AETNA LIFE INSURANCE COMPANY, INC., : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> MAXIMUM MEDICAL & REHABILITATION, DR. JAMES MORALES, and JOHN DOES 1-20, : <br> : <br> Defendants. : | **JURY TRIAL DEMANDED** |

## COMPLAINT AND JURY DEMAND

Plaintiff Aetna Life Insurance Company ("Aetna"), by way of this Complaint against Defendants Maximum Medical & Rehabilitation ("MMR"), Dr. James Morales ("Morales"), and John Does 1-20 (collectively, "Defendants"), alleges as follows:

## INTRODUCTION

1. Aetna brings this action to redress more than $500,000 in fraudulent and/or improper payments to Defendants.

2. Defendants have submitted claims for surgery center facility fees in connection with visits that took place in various locations, all of which lacked the requisite surgery center license or otherwise qualified as an ambulatory surgery facility.

3. Aetna relies upon providers to submit accurate information and make truthful representations in claim forms to ensure that, *inter alia*, the service being charged is actually being rendered and the facility fee is appropriate and necessary.

4. Aetna and state law require that all claim submissions be certified as correct and complete and that the benefits claimed be limited to charges actually incurred.

5. MMR has been submitting claims to Aetna for facility fees utilizing a service address of 90 Route 10 West, Succasunna, NJ 07876 when in fact services are being rendered in various other locations, including fitness centers or standalone offices that do not qualify for a separate facility fee.

6. Aetna relied upon Defendants' false and inaccurate claim forms to issue more than $500,000 in wrongful payments.

7. Aetna now brings this action to hold Defendants accountable for their misconduct and seeks statutory penalties, compensatory damages, treble damages, attorneys' fees, and costs.

## PARTIES

8. Aetna Life Insurance Company is a corporation organized under the laws of the State of Connecticut with its principal place of business in the State of Connecticut.

9. Defendant Maximum Medical & Rehabilitation is a physical medicine and rehabilitation facility located at 90 Route 10 West, Succasunna, NJ 07876.

10. Defendant Dr. James Morales is a physician practicing in the State of New Jersey with at least one business address of 1851 Hooper Avenue, Toms River, NJ 08753.  Morales is the medical director for MMR.

11. Upon information and belief, John Does 1-20 are subsidiaries set up by Maximum and/or Dr. Morales.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over the Defendants and this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Aetna and Defendants, and because the amount in controversy between Aetna and Defendants exceeds $75,000.00, exclusive of interest and costs.

13. Venue is appropriate because the complained of acts, including the services and fraudulent billing, occurred in this District.

## FACTS

### I. Aetna Relies Upon Providers Like Defendants To Submit Accurate Claim Forms.

14. Aetna insures and/or administers commercial and governmental health benefits plans on behalf of private employers and government entities.

15. To obtain payment for services, healthcare providers like Defendants submit health insurance claims by submitting standard billing forms. Per Federal law, these forms require providers to use numerical codes to describe the services for which the provider seeks payment.

16. Aetna relies upon providers to submit accurate information and to make truthful representations on claim forms in order to determine whether a service is covered and, if so, the appropriate amount of payment.

17. Providers like Defendants intend for Aetna to rely upon their representations in claim forms when determining payment for services.

18. Applicable laws, the claim forms themselves, and Aetna require that all claim submissions be certified as correct and complete.

### II. Defendants Improperly Bill Aetna For Facility Fees.

19. In certain circumstances, a patient who has sought medical treatment and/or an insurer may receive a bill for services that consists of a professional fee for the provider's services as well as a facility fee.

20. Facility fees consist of fees charged, often by hospitals and hospital based-facilities (such as outpatient clinics that are owned by a hospital), and cover overhead costs such as equipment, space, and support staff.

21. Ambulatory surgical centers, like hospitals, are also eligible for facility fees under certain conditions. As relevant here, facility fees are usually only payable for ambulatory surgical centers if the center is "licensed as an ambulatory surgical facility or whatever comparable title is used by the state's licensing law."

22. The New Jersey Department of Health identifies "Ambulatory Surgery" as a type of facility and defines it as "a surgical facility in which ambulatory surgical cases are performed and which is licensed as an ambulatory surgery facility, separate and apart from any other facility license. (The ambulatory surgery facility may be physically connected to another licensed facility, such as a hospital, but is corporately and administratively distinct.)" *See* https://www.nj.gov/health/healthfacilities/about-us/facility-types/ .

23. Starting on or about July 6, 2022, MMR began submitting claims to Aetna for a professional fee identifying Morales as the provider and a separate facility fee by MMR.

24. Upon submitting each UB-04 claim form, MMR certified that the information was "true, accurate and complete" with the understanding that misrepresentation or falsification of information on the form could serve as the basis for civil monetary penalties, fines and imprisonment under Federal and/or State Laws.

25. The services were being provided in fitness centers, chiropractic offices, and/or physical therapy centers. But on at least 550 separate occasions MMR submitted claims to Aetna certifying that the services were being conducted at a separate address that was a licensed ambulatory surgical center. Each claim submitted was fraudulent.

26. Facility fees are not reimbursable for office-based services unless they are licensed by the State of New Jersey or Medicare certified. Likewise, these fees charged by MMR, which at times reached $12,000 for each alleged encounter, are certainly not reimbursable for alleged

medical services that were rendered in a gym or fitness center. Upon information and belief, the various locations where Dr. Morales performed the services at issue were neither licensed by the State of New Jersey nor Medicare certified.

27. By way of further example, separate facility fees are not even reimbursable for services provided in a doctor's office – so certainly a physical therapy center or a gym would not qualify.

28. Moreover, the services being reported and for which MMR sought separate facility fees were not services that would require the use of an Ambulatory Surgery facility (which is why they were capable of being performed in locations that clearly do not meet the NJ Department of Health's definition of such facilities).

29. Despite these services taking place at various locations throughout New Jersey that were not Ambulatory Surgery facilities, MMR submitted claims utilizing the service address of 90 Route 10 West, Succasunna, NJ 07876.

30. MMR's choice to use the Succasunna address regardless of where services were provided was intentional as that is the only MMR facility that has an Ambulatory Surgery facility license. This misrepresentation was intended to dupe Aetna into believing that these services were actually performed at Ambulatory Surgery facilities that could justify a separate facility fee.

31. As further evidence of MMR's deception, the claims it submitted included "revenue codes" of 360 ("Operating Room Services") and 490 ("Ambulatory Surgery Care").

32. Many of the disputed claims also bear a "place of service code" of 24 ("Surgery Center"), even though none of the treatment associated with the disputed claims was administered in an operating room or an ambulatory surgery center.

33. MMR chose to submit claims with false and deceptive revenue codes and place of service codes to make it appear as though it was entitled to a separate facility fee from Aetna even though it clearly did not meet Aetna or the New Jersey Department of Health's criteria allowing such fees.

## FIRST CAUSE OF ACTION

### Violation of New Jersey Insurance Fraud Prevention Act

34. Aetna repeats and incorporates herein by reference the allegations contained in the preceding paragraphs.

35. Since 2022, Defendants have perpetrated a scheme to defraud Aetna through the knowing submission of false insurance claims using deceptive revenue codes and place of service codes, all in an effort to recover facility fees to which they are not entitled.

36. Aetna paid Defendants at least $567,924.73 in reasonable and foreseeable reliance upon the misrepresentations in the false health insurance claims they submitted.

37. N.J. Stat. § 17:33A-1 et seq. is the New Jersey Insurance Fraud Prevention Act (the "Act").

38. The purpose of the Act is "to confront aggressively the problem of insurance fraud in New Jersey by facilitating the detection of insurance fraud, eliminating the occurrence of such fraud through the development of fraud prevention programs, requiring the restitution of fraudulently obtained insurance benefits, and reducing the amount of premium dollars used to pay fraudulent claims" *See* § 17:33A-2.

39. Under § 17:33A-4, a person or practitioner violates the Act if he/she

(a)(1) "presents or causes to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an

insurance policy . . . knowing that they statement contains any false or misleading information concerning any fact or thing material to the claim; or

(a)(2) prepares or makes any written or oral statement that is intended to be presented to any insurance company . . . in connection with, or in support of or opposition to any claim for payment or other benefit pursuant to any insurance policy . . . knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim."

40. Additionally, "a person or practitioner violates this act if he knowingly assists, conspires with, or urges any person or practitioner to violate any of the provisions of this act" and if he "knowingly benefits, directly or indirectly, from the proceeds derived from a violation of this act." *See* § 17:33A-4(b) and (c).

41. Under § 17:33A-7(a), "any insurance company damaged as a result of a violation of any provision of this act may sue therefor in any court of competent jurisdiction to recover compensatory damages, which shall include reasonable investigation expenses, costs of suit and attorneys' fees."

42. Under § 17:33A-7(b) of the same Act, "a successful claimant under subsection a. shall recover treble damages if the court determines that the defendant has engaged in a pattern of violating this act."

43. For purposes of this Act, "pattern" means five or more related violations. "Violations are related if they involve either the same victim, or same or similar actions on the part of the person or practitioner charged with violating P.L. 1983 c.320 (C. 17:33A-I et seq.)."

7

44. Defendants have engaged in a pattern of violating the Act by submitting more than $567,924.73 worth of deceptive claims seeking fraudulent facility fees over at least a two year period.

**WHEREFORE,** Aetna demands judgment in its favor and against Defendants, for all its damages, including compensatory damages, treble damages, costs of suit and attorneys' fees.

## SECOND CAUSE OF ACTION

### Common Law Fraud

45. Aetna repeats and incorporates herein by reference the allegations contained in the preceding paragraphs.

46. Since 2022, Defendants have perpetrated a scheme to defraud Aetna through the knowing submission of false insurance claims using deceptive revenue codes and place of service codes, all in an effort to recover facility fees to which they are not entitled.

47. Defendants intended for Aetna to rely upon their knowing misrepresentations in the claim forms they submitted in order to determine whether and how much Defendants would be paid.

48. Aetna paid Defendants at least $567,924.73 in reasonable and foreseeable reliance upon the misrepresentations in the false health insurance claims they submitted.

**WHEREFORE**, Aetna demands judgment in its favor and against Defendants, for all its damages, including compensatory damages, treble damages, costs of suit and attorneys' fees.

## THIRD CAUSE OF ACTION

### Negligent Misrepresentation

49. Aetna repeats and incorporates herein by reference the allegations contained in the preceding paragraphs.

50. Since 2022, Defendants have perpetrated a scheme to defraud Aetna through the knowing submission of false insurance claims using deceptive revenue codes and place of service codes, all in an effort to recover facility fees to which they are not entitled.

51. Defendants had a duty to verify the accuracy and completeness of information contained on the claim forms they certified as true and submitted to Aetna for reimbursement.

52. Defendants knew, or should have known, that the claims they submitted misrepresented the services rendered and the location where the services were provided.

53. Aetna reasonably and foreseeably relied upon the misrepresentations of Defendants to its detriment in issuing payment.

54. As a result, Aetna has suffered damages and irreparable harm including, but not limited to, amounts paid for services rendered unlawfully in excess of $567,924.73.

55. The actions of Defendants were the direct and proximate cause of the damages to Aetna.

**WHEREFORE,** Aetna demands judgment in its favor and against Defendants for all damages, including compensatory damages, treble damages, costs of suit and attorneys' fees.

## FOURTH CAUSE OF ACTION

### Unjust Enrichment

56. Aetna repeats and incorporates herein by reference the allegations contained in the preceding paragraphs.

57. Since 2022, Defendants have perpetrated a scheme to defraud Aetna through the knowing submission of false insurance claims using deceptive revenue codes and place of service codes, all in an effort to recover facility fees to which they are not entitled.

58. Defendants knew that the insurance claims for services contained false and inaccurate statements which affected their right to payment.

59. As a result of improper billing by Defendants, Aetna paid Defendants in excess of $567,924.73 to which they were not entitled.

60. Aetna reasonably and foreseeable relied upon Defendants' misrepresentations.

61. Defendants negligently and proximately caused Aetna's damages.

62. As a result of fraud and improper billing by Defendants, Defendants have been unjustly enriched.

**WHEREFORE**, Aetna demands judgment in its favor and against Defendants for all damages, including compensatory damages, treble damages, costs of suit and attorneys' fees.

### DEMAND FOR A JURY TRIAL

Plaintiff Aetna Life Insurance Company demands a jury trial on all Counts so triable.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

/s/ *Benjamin H. McCoy*
Benjamin H. McCoy
Beth L. Weisser
980 Jolly Road, Suite 110
Blue Bell, PA 19422
(610) 397-6500
bmccoy@foxrothschild.com
bweisser@foxrothschild.com

Attorneys for Plaintiff

Dated: November 7, 2024