<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

|                                                    |   |                                          |
| :------------------------------------------------- | - | :--------------------------------------- |
| AETNA LIFE INSURANCE COMPANY,                      | : |                                          |
|                                                    | : | **Civil Action No. 24-10362 (SRC)**      |
| Plaintiff,                                         | : |                                          |
|                                                    | : |                                          |
| v.                                                 | : | **OPINION & ORDER**                      |
|                                                    | : |                                          |
| MAXIMUM MEDICAL &                                  | : |                                          |
| REHABILITATION, LLC, DR. JAMES                     | : |                                          |
| MORALES, and JOHN DOES 1-20                        | : |                                          |
|                                                    | : |                                          |
| Defendants.                                        | : |                                          |

---

<u>**CHESLER**</u>, District Judge

This matter comes before the Court on Defendants Maximum Medical & Rehabilitation, LLC ("MMR") and Dr. James Morales' ("Dr. Morales," and together with MMR, "Defendants") motion to dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), (Dkt. No. 17).  Plaintiff Aetna Life Insurance Company, Inc. ("Aetna" or "Plaintiff") opposed the motion.  The Court heard oral argument on the motion on March 19, 2025.  For the reasons set forth below, the motion will be **GRANTED** in part and **DENIED** in part.

**I.    FACTUAL BACKGROUND**

This case arises out of allegations that Defendants engaged in a fraudulent and/or improper billing scheme to recoup "at least $567,9624.73" in payments from Plaintiff by submitting claims that contained false or misleading information regarding "facility fees" that Defendants were not entitled to.

Aetna insures and administers commercial and governmental health benefit plans to private employers and government entities.  (Dkt. No. 15 ("Am. Compl.") ¶ 14.)  Defendant MMR is "a

-1-

physical medicine and rehabilitation facility." (Id. ¶ 9.)  Defendant Dr. Morales is a New Jersey physician and the medical director of MMR.  (Id. ¶ 10.)

To obtain payment for services from Plaintiff, healthcare providers, like Defendants, submit health insurance claims using "standard billing forms."  (Id. ¶ 15.)  These standard billing forms require providers to use numerical codes to describe the service the healthcare provider rendered.  (Id.)  Plaintiff uses billing forms to determine whether a service is covered and if so, the appropriate amount of payment owed to the healthcare provider.  (Id. ¶ 16.)

Plaintiff names one type of billing form in the Amended Complaint, a UB-04 form,[1] and attaches as exhibits certain unnamed digital claim forms[2] that Defendants used to perpetrate their alleged scheme.  (Id. ¶¶ 25–27, 35, 44.)  From June 2022 to at least June 2023, MMR submitted claims to Aetna for professional fees, identifying Dr. Morales as the healthcare provider, and separate facility fees, in addition to other claims related to the same set of services.  (Id. ¶¶ 23–24.)  According to Plaintiff, "[f]acility fees consist of fees charged, often by hospitals and hospital based-facilities (such as outpatient clinics that are owned by a hospital), and cover overhead costs such as equipment, space, and support staff."  (Id. ¶ 20.)  Facility fees "are not reimbursable for office-based services unless they are licensed by the State of New Jersey or Medicare certified." (Id. ¶ 28.)

An ambulatory surgical center ("ASC"), for example, is eligible for a facility fee, but only under certain conditions such as whether the ASC is licensed as such by the State of New Jersey or is Medicare-certified.  (Id. ¶¶ 21, 28.)  The New Jersey Department of Health defines "Ambulatory Surgery" as "a surgical facility in which ambulatory surgical cases are performed

---

[1]  (See Dkt. No. 17 ("Mot."), Ex. C.)

[2]  (See Am. Compl., Ex. C & Ex. D.)

and which is licensed as an ambulatory surgery facility, separate and apart from any other facility license." (Id. ¶ 22.)  MMR has one licensed ASC that meets the State's definition that is located at 90 Route 10, West Succasunna, New Jersey 07876.  (Id. ¶¶ 5, 34.)

Plaintiff, however, alleges that on at least 550 separate occasions, Defendants submitted claims for services that "[u]pon information and belief," were "being provided in fitness centers, chiropractic offices, and/or physical therapy centers."  (Id. ¶¶ 27–28.)  Plaintiff asserts that the locations where services were actually rendered "were neither licensed by the State of New Jersey nor Medicare certified." (Id. ¶ 28.)  The claim forms Plaintiff received from Defendants allegedly used the licensed Succasunna address regardless of where the services were provided because it is the one MMR facility with an ambulatory surgery facility license.[3]  (Id. ¶ 34.)  Most of the disputed claims also contain a Place of Service ("POS") Code of 24 (Surgery Center), and include Revenue Codes of 360 (Operating Room Services) and 490 (Ambulatory Surgery Care), "even though none of the treatment associated with the disputed claims was administered in an operating room or an ambulatory surgery center." (Id. ¶¶ 31, 35.)

By using the address of MMR's licensed ASC and the above POS and Revenue Codes on their claims, Defendants were able to make it appear to Plaintiff that they were entitled to separate facility fees.  (Id. ¶ 53.)  Plaintiff, in relying on the contents of Defendants' claims, determined that Defendants' claims for separate facility fees were reimbursable, and reimbursed Defendants accordingly.  (Id. ¶¶ 67, 70–74, 81–82, 87–88.)

Through this alleged scheme of submitting deceptive claim forms, Aetna paid Defendants "at least $567,924.73" for facility fees they were not entitled to "in reasonable and foreseeable

---

[3]    The Court notes that Plaintiff did not provide any true and correct copies of actual UB-04 forms Defendant MMR submitted.

reliance upon the misrepresentations in the false health insurance claims they submitted." (Id. ¶ 56.)

## II.    PROCEDURAL HISTORY

Plaintiff initiated this matter on November 7, 2024 alleging claims for (I) Violating the New Jersey Insurance Fraud Prevention Act, (II) Common Law Fraud, (III) Negligent Misrepresentation, and (IV) Unjust Enrichment.   On December 18, 2024, Defendants filed a motion to dismiss and to stay discovery in this matter.   On January 8, 2025, Plaintiffs filed an amended complaint (the "Amended Complaint") asserting the same four claims alleged in its initial complaint, (Dkt. No. 15).   On February 5, 2025, Defendants filed a motion to dismiss the Amended Complaint and stay discovery (the "Motion"), (Dkt. No. 17).   Plaintiff filed an opposition to Defendants' Motion on March 3, 2025, (Dkt. No. 21).   Defendants filed a reply brief in further support of their Motion on March 10, 2025, (Dkt. No. 22).   The parties appeared before the Court to be heard on this Motion on March 19, 2025.   Through their Motion, Defendants argue that the Amended Complaint should be dismissed in its entirety under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and further, that Counts I–III should be dismissed for failing to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).

## III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear a claim.   "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007).   In evaluating a Rule 12(b)(1) motion to dismiss, the Court must first determine whether the motion "presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must

-4-

be reviewed." Const. Party of Pa. v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014). A facial attack "considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law . . . or because some other jurisdictional defect is present." Id. at 358. A factual attack, however, "is an argument that there is no subject matter jurisdiction because the facts of the case—and here the District Court may look beyond the pleadings to ascertain the facts—do not support the asserted jurisdiction." Id. "Thus, a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving party," which "is in marked contrast to the standard of review applicable to a factual attack, in which a court may weigh and 'consider evidence outside the pleadings.'" Id. (quoting Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000)).

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. On a Rule 12(b)(6) motion, the Court must accept as true the well-pleaded facts of a complaint and any reasonable inference that may be drawn from those facts but need not credit conclusory statements couched as factual allegations. See id. ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The issue before the Court on a Rule 12(b)(6) motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting

Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).  "[A] district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."  Id. at 1426.  The Court, however, may properly consider documents that form the basis of a claim and documents that are "integral to or explicitly relied upon in the complaint."  Id. (citations omitted).[4]

Additionally, Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  To satisfy this requirement, a plaintiff may plead the "date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud."  Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir. 2004) (internal citations omitted), abrogated in part on other grounds by Twombly, 550 U.S. at 557.  "Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation."  Id.  This heightened pleading requirement gives "defendants notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits brought solely to extract settlements."  In re Burlington Coat Factory Secs. Litig., 114 F.3d at 1418.  "Plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible" because "boilerplate and conclusory allegations will not suffice."  Id.

---

[4]    For purposes of this motion, the Court also relies on the exhibits attached to Defendants' Motion for these documents are "integral to or explicitly relied upon in the complaint."  Id.

## IV.    DISCUSSION

### A.    Dismissal Under Rule 12(b)(1)

The Court addresses Defendants' arguments for dismissal under Rule 12(b)(1) first as the Court has an obligation to satisfy itself that it has proper subject matter jurisdiction over a case and to address the issue *sua sponte*.  See Meritcare Inc. v. St. Paul Mercury Ins., 166 F.3d 214, 217 (3d Cir. 1999), overruled on other grounds by Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546 (2005).  The Amended Complaint alleges that this Court has federal subject matter jurisdiction over this action by virtue of diversity jurisdiction under 28 U.S.C. § 1332(a).[5]  (Am. Compl. ¶ 12.)

Defendants do not dispute the existence of federal subject matter jurisdiction on the basis of diversity, but instead argue that the Amended Complaint must be dismissed because it contains "claims that are so 'implausible' and otherwise 'devoid of merit as not to involve a federal controversy.'"  (Mot. at 21–22 (quoting Nunez-Torres v. New Jersey, 2012 WL 5944669 (D.N.J. Nov. 27, 2012)).)  Courts, however, apply the standard Defendants rely upon to cases where jurisdiction is dependent on the existence of a federal question, not diversity.  See, e.g., Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) ("Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" (quoting Oneida Indian Nation of N.Y.

---

[5]    The Motion identifies Defendant MMR as a limited liability company, a designation which is not present in the Amended Complaint.  Plaintiff shall be granted leave to amend the complaint to properly describe MMR's corporate form as a limited liability company and demonstrate that the citizenship of each member of MMR is diverse from Plaintiff to establish that complete diversity exists.  See Lincoln Benefit Life Co. v. AEI Life, LLC, 800 F.3d 99, 105 (3d Cir. 2015) ("For complete diversity to exist, all of the LLC's members 'must be diverse from all parties on the opposing side.'" (citation omitted)).

v. Cnty. of Oneida, 414 U.S. 661, 666 (1974))).  Given the absence of a federal question here, the Court denies Defendants' Motion under 12(b)(1).[6]

### B.  Dismissal as an Impermissible Group Pleading

Defendants first moved to dismiss the Amended Complaint in its entirety as an impermissible group pleading.  (Mot. at 9.)  "[C]ourts in this District generally do not allow 'group pleading,' because the complaint must allege 'sufficient facts to identify each defendant's role.'"  MHA, LLC v. Amerigroup Corp., 539 F. Supp. 3d 349, 365 (D.N.J. 2021) (citation omitted).  Indeed, courts will dismiss such complaints because "[t]his type of pleading fails to satisfy Rule 8."  Mills v. Ethicon, Inc., 406 F. Supp. 3d 363, 386 (D.N.J. 2019).  In addition to the pleading requirements of Rule 8, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together."  Ponzio v. Mercedes-Benz USA, LLC, 447 F. Supp. 3d 194, 226 (D.N.J. 2020) (quoting Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007)).

Though the Amended Complaint frequently uses the term, "Defendants," it also contains many allegations about MMR's individual conduct.  (See, e.g., Am. Compl. ¶¶ 5, 23, 25, 27–28, 30, 32–35.)  Plaintiff also characterizes Exhibits B, C, and D to the Amended Complaint as "claim[s] submitted by MMR."  (Id. ¶¶ 27, 35, 44.)

Plaintiff, however, fails to set forth sufficient allegations as to Dr. Morales' conduct.  For example, the Amended Complaint mentions Dr. Morales in conclusory allegations that the claims identify him as the "provider" and once that "on at least 550 separate occasions MMR and Morales submitted claims to Aetna."  (See id. ¶¶ 23, 27–28, 39, 48.)  The Amended Complaint also identifies Dr. Morales as "the medical director for MMR," (id. ¶ 10), but provides no explanation

---

[6]    Additionally, in considering the parties' arguments presented during oral argument, the Court has little doubt that Plaintiff can and will submit an amended pleading that is not so insubstantial, implausible, or completely devoid of merit.

of Dr. Morales' job requirements or how Dr. Morales, in his capacity as MMR's medical director, participated in the alleged scheme.[7]  This lack of specificity as to Dr. Morales' role in the alleged fraud renders the allegations asserted against Dr. Morales insufficient for purposes of both Rule 8 and Rule 9(b)'s pleading standards.  See, e.g., MHA, LLC, 539 F. Supp. 3d at 365 (dismissing the parent company of another named defendant where "[t]he Complaint d[id] not allege any facts to permit an inference that [the parent company] should equally be liable").  The Court thus denies Defendants' request to dismiss the Amended Complaint in its entirety as an impermissible group pleading, but grants Defendants' request to dismiss Dr. Morales as a defendant without prejudice.  Plaintiff shall have the opportunity to replead its claims to assert specific allegations as to Dr. Morales' own conduct and participation in the alleged scheme.

### C. Dismissal of Claims Against MMR Under Rule 9(b)'s Heightened Pleading Standard

Defendants next seek to dismiss Plaintiff's claims for (I) Violation of the New Jersey Insurance Fraud Prevention Act; (II) Common Law Fraud; and (III) Negligent Misrepresentation for failing to meet the heightened pleading standard for fraud claims that Federal Rule of Civil Procedure Rule 9(b) requires.  (See Mot. at 13.)  Defendants also seek to dismiss these claims and Count IV for Unjust Enrichment on the basis that they are insufficiently pled under Rule 12(b)(6).  (See id. at 33.)

---

[7]    Plaintiff cites to Yu-Chin Chang v. Upright Financial Corp., 2020 WL 473649 (D.N.J. Jan. 28, 2020) in support of its argument that Defendants' motion to dismiss under Rule 8(a)(2) should be denied.  (See Dkt. No. 21 ("Opp'n Br.") at 12–13.)  In that case, however, the complaint contained specific allegations about the conduct of defendant Yow Shang "David" Chieuh, the principal of co-defendant, Upright Financial Corp., and the "human being alleged to have made the misrepresentations . . . ."  Yu-Chin Chang, 2020 WL 473649, at *1.  The inverse situation is present here and based on the facts asserted in the Amended Complaint, the Court cannot assume that Dr. Morales is the "human being alleged to have made the misrepresentations" that MMR made, because no such allegation is sufficiently pled.

Rule 9(b) applies to fraud-based claims such as Counts I and II because on their face, they are fraud claims. This heightened pleading standard, however, applies to Counts III and IV because "Rule 9(b) also applies to claims under any legal theory whose supporting factual allegations 'sound in fraud.'" MHA, LLC, 539 F. Supp. 3d at 360 (quoting In re Suprema Specialties, Inc. Secs. Litig., 438 F.3d 256, 272 (3d Cir. 2006)). Plaintiff's negligent misrepresentation and unjust enrichment claims "sound in fraud" because Plaintiff alleges under both counts that "Defendants have perpetrated a scheme to defraud Aetna through the knowing submission of false insurance claims," (Am. Compl. ¶¶ 76, 85), Defendants knew or should have known that the claims submitted contained false and inaccurate statements or misrepresentations about the services rendered, (id. ¶¶ 78, 86), and that Plaintiff reasonably and foreseeably relied on Defendants' misrepresentations in issuing payment, (id. ¶¶ 81, 88). The Court will therefore determine whether Plaintiff adequately plead all four counts under Rule 9(b)'s heightened standard of review, even though Defendants only address Rule 9(b) as applied to Counts I–III. See, e.g., Travelers Indem. Co. v. Cephalon, Inc., 620 F. App'x 82, 85 n.3 (3d Cir. 2015) ("[A]ll of Plaintiffs' claims alleging fraudulent activity—i.e., Plaintiffs' claims for intentional and negligent misrepresentation, unjust enrichment and an injunction—must be pled with sufficient particularity under Rule 9(b)."); Durr v. Mech. Constr., Inc. v. PSEG Fossil, LLC, 516 F. Supp. 3d 407, 419 (D.N.J. 2021) ("[W]hen a complaint incorporates fraud-like allegations (for example, that a defendant knowingly made a false statement), the claim may sound in fraud and be subject to Rule 9(b).").

In opposing Defendants' Motion, Plaintiff argues that meeting the Rule 9(b) standard is more lenient in the context of a "fraudulent healthcare scheme" in that "the Third Circuit only requires a plaintiff to allege the 'particular details of a scheme to submit false claims paired with

reliable indicia that lead to a strong inference that claims were actually submitted.'" (Opp'n Br. at 14 (quoting <u>Foglia v. Renal Ventures Mgmt., LLC</u>, 754 F.3d 153, 156 (3d Cir. 2014)).) Plaintiff relies on the Third Circuit's decision in <u>Foglia</u> to argue that it need not "show representative samples of the alleged fraudulent scheme, much less assert claim-by-claim allegations" and that "plaintiff does not even need to 'identify a specific claim for payment at the pleading stage of the case to state a claim for relief.'" (<u>Id.</u> (quoting <u>Foglia</u>, 754 F.3d at 156).)

    In <u>Foglia</u>, the Third Circuit addressed the issue of what Rule 9(b) requires of a False Claims Act ("FCA") claimant because "the various Circuits disagree as to what a plaintiff . . . must show at the pleading stage to satisfy the "particularity" requirement of Rule 9(b) in the context of a claim under the FCA." <u>Foglia</u>, 754 F.3d at 155. The Fourth, Sixth, Eighth, and Eleventh Circuits hold "that a plaintiff must show 'representative samples' of the alleged fraudulent conduct, specifying the time, place, and content of the acts and the identity of the actors." <u>Id.</u> The First, Fifth, and Ninth Circuits "take a more nuanced reading of the heightened pleading requirements of Rule 9(b), holding that it is sufficient for a plaintiff to allege 'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'" <u>Id.</u> at 156 (quoting <u>United States ex rel. Grubbs v. Kanneganti</u>, 565 F.3d 180, 190 (5th Cir. 2009)). The Third Circuit considered the text of the FCA, "which does not require that the exact content of the false claims in question be shown," along with briefs submitted by the United States in other factually similar cases to hold that the First, Fifth, and Ninth Circuit's more "nuanced" approach suffices for FCA claimants. <u>See id.</u> at 156–57. In finding that the FCA claimant met the pleading standards of Rule 9(b), the Third Circuit found that the plaintiff's allegations sufficed to give defendant notice of the charges against it, particularly where the

defendant, "and only [the defendant], has access to the documents that could easily prove the claim one way or another—the full billing records from the time under consideration." Id. at 158.

Plaintiff argues that Foglia "extends to healthcare fraud claims brought under state law because its reasoning pertains to Rule 9(b)" and cites to Aetna Inc. v. Mednax, Inc., 2018 WL 5264310, at *7 (E.D. Pa. Oct. 23, 2018) in support. (Opp'n Br. at 14 n.3.) Though the Court is not convinced Foglia's nuanced approach to the Rule 9(b) standard applies to non-FCA claims, whether Plaintiff needed to provide representative samples or proof of specific, fraudulent claims is not the issue here. The issue here is that the Amended Complaint, even with Plaintiff's "claims data" and two "representative claim[s]" attached as exhibits, fails to sufficiently "inject[] precision and some measure of substantiation into the[] allegations of fraud." Lum, 361 F.3d at 224 (citation omitted). Neither the Third Circuit in Foglia nor the Eastern District of Pennsylvania in Mednax departed from Rule 9(b)'s requirement that a party "state with particularity the circumstances constituting fraud" with "particular details of [the] scheme." See Foglia, 754 F.3d at 157–58; Mednax, Inc., 2018 WL 5264310, at *7–8.

The Amended Complaint lacks particular details of the scheme—details, which unlike the FCA claimant in Foglia, are in Plaintiff's possession. See, e.g., Foglia, 754 F.3d at 158 (finding plaintiff's allegations sufficient to give defendant notice of the scheme particularly where defendant has access to the documents "that could easily prove the claim one way or another"). In each count of the Amended Complaint, Plaintiff alleges that "[s]ince 2022, Defendants have perpetrated a scheme to defraud Aetna through the knowing submission of false insurance claims using deceptive revenue codes and place of service codes, all in an effort to recover facility fees to which they are not entitled." (Am. Compl. ¶¶ 55, 69, 76, 85.) Plaintiff asserts that this scheme consists of over 550 fraudulent claims for facility fees, but only provides vague descriptions of

unspecified "services" that Defendants provided in unspecified "fitness centers, chiropractic offices, and/or physical therapy centers" that lacked an ASC license.  (Id. ¶¶ 2, 27.)  In a case asserting hundreds of fraud claims, at a minimum, Plaintiff should be able to provide the locations where services were provided that were not entitled to a facility fee and the nature of those facilities to put those entities on notice.  See, e.g., In re Riddell Concussion Reduction Litig., 77 F. Supp. 3d 422, 434–35 (D.N.J. 2015) (finding a lack of specificity in plaintiffs' complaint in part, where plaintiffs' amended complaint listed "eight statements without any further information to identify the source," did not allege "where these statements appeared," and included "images containing statements about concussion reduction, but it [wa]s unclear whether these images are from marketing materials, and if so, when and where they appeared").  General allegations that Defendants fraudulently billed for services rendered in "fitness centers, chiropractic offices, and/or physical therapy centers" is not even adequate under Rule 8 and Iqbal's pleading standards.  See Iqbal, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting Twombly, 550 U.S. at 555)).

In further support of its allegations, Plaintiff attached Exhibit B to the Amended Complaint, which Plaintiff describes as "Aetna's claims data" consisting of "each claim submitted by MMR and paid by Aetna from June 1, 2022 to June 15, 2023."  (Am. Compl. ¶ 27; id., Ex. B.)  Exhibit B is a twenty-four-page exhibit with "claims data" listed in six categories: service date, POS, PRCDR_CD, billed amount, paid amount, and provider name.  (Id., Ex. B.)  It is unclear whether this data is collected from UB-04 claim forms or by other means.

For purposes of this Motion, the Court is obligated to accept as true the fact that this exhibit represents actual claims MMR submitted to Aetna that Aetna paid and will not address the admissibility of such exhibits as Defendants argue it should.  (See Mot. at 16–17.)  The exhibit,

however, lends no support or further substantiation to Plaintiff's allegations that MMR wrongfully billed Aetna for facility fees because it is unclear what services were charged, the location where such services took place, and who actually submitted such claims.  <u>Compare</u> (Am. Compl., Ex. B) <u>with</u> <u>Open MRI and Imaging of RP Vestibular Diagnostics, P.A. v. Horizon Blue Cross Blue Shield of N.J.</u>, 2022 WL 4354654, at *7 (D.N.J. Sept. 20, 2022) (finding Rule 9(b) heightened pleading requirement met where plaintiff substantiated the allegations with "a detailed chart of the specific billing codes and their text, which describes the services and level of care that each code encompasses[,]" redacted snapshots of patient encounters submitted in support of claims, "and Horizon's claims data identifying patients by initials, the dates of service, procedure codes, amount billed, amount paid, and the rendering provider for each allegedly fraudulent claim at issue in this case").  Further, though the Amended Complaint alleges that Defendants' use of POS Code 24, as it appears on many, but not all, of the "claims" in Exhibit B "was intended to mislead Aetna into believing that services were actually being administered in a licensed surgery center," (Am. Compl. ¶ 32), Exhibit B does not describe where any services were rendered or what fraud was committed for the claims listed that did not use a POS code of 24.  <u>See, e.g.</u>, <u>In re Riddell Concussion Reduction Litig.</u>, 77 F. Supp. 3d at 433–34 (addressing how "Plaintiffs' scatter-shot pleading lists examples of Defendants' marketing statements without identifying which specific statement(s), if any, Plaintiffs were exposed to" and concluding that "Rule 9(b) may be satisfied here if the marketing statements Plaintiffs identify were uniform, but they are not").

Moreover, Plaintiff's inclusion of merely two "representative samples" of fraudulent claims, when Plaintiff contends it possesses every fraudulent claim, is insufficient.  The fact that Plaintiff has the information necessary to inject precision into its pleadings, but chose not to, is a crucial distinction from <u>Foglia</u>.  Plaintiff's "samples" also do not support Plaintiff's allegation that

-14-

MMR perpetrated this fraud by submitting UB-04 claim forms that contained inaccurate information in Box 1[8] because while it is unclear from the Amended Complaint how Aetna received the data in Exhibits C and D, it is clear that these exhibits do not represent samples of UB-04 claim forms MMR actually submitted. (See Am. Compl. ¶¶ 25–26; compare id., Ex. C & Ex. D with Mot., Ex. C (sample UB-04 claim form).)

The Court finds that Plaintiff has not met the pleading requirements of Rule 9(b) for all claims and thus does not state a plausible claim for relief under Rule 12(b)(6). Counts I–IV against MMR are therefore dismissed under Rule 12(b)(6) without prejudice for failing to satisfy the heightened pleading requirement of Rule 9(b). In consideration of the above and the arguments presented by the parties during oral argument, the Court grants Plaintiff leave to replead as it is reasonably certain that Plaintiff can plead a legally sufficient complaint with adequate detail as required by Rules 8 and 9(b) should it file an amended pleading.

*     *     *

For these reasons,

**IT IS** on this 23rd day of April, 2025

**ORDERED** that the Motion to Dismiss the Amended Complaint, (Dkt. No. 17), under Federal Rule of Civil Procedure 12(b)(1) is **DENIED**; and it is further

---

[8] The Court notes that both parties attached exhibits with different instructions for filling out "Box 1" of a UB-04 claim form, which creates an issue of fact as to whether Box 1 should contain the address of the service location or of the billing provider. (Compare Am. Compl., Ex. A at 2 (dated July 2024 and defining "Form Locator 01" as "[t]he name and service location of the provider submitting the bill," but containing a mark that the document is "[f]or NUBC Members Only . . . Please do not copy or distribute") with Mot., Ex. D at 1, 3, 10 (dated Dec. 20, 2023, and instructing users to put the "Billing Provider Name, Address, and Telephone Number" in Box 1).) The Court, however, need not address this factual issue at this time.

**ORDERED** that the Motion to Dismiss the Amended Complaint, (Dkt. No. 17), under Federal Rule of Civil Procedure 12(b)(6) as to all counts against Defendant Dr. James Morales is **GRANTED** without prejudice; and it is further

**ORDERED** that the Motion to Dismiss the Amended Complaint, (Dkt. No. 17), under Federal Rule of Civil Procedure 12(b)(6) as to all counts against Defendant MMR is **GRANTED** without prejudice; and it is further

**ORDERED** that Plaintiff is granted leave to file a second amended complaint within thirty (30) days of this Order.

*s/ Stanley R. Chesler*
STANLEY R. CHESLER, U.S.D.J.