<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| AETNA LIFE INSURANCE COMPANY, INC., | : : : | **Civil Action No. 24-10362 (SRC)** |
| Plaintiff, | : : : | **OPINION & ORDER** |
| v. | : : |  |
| MAXIMUM MEDICAL & REHABILITATION, LLC, DR. JAMES MORALES, and JOHN DOES 1-20, | : : : : |  |
| Defendants. | : |  |

**CHESLER**, <u>District Judge</u>

This matter comes before the Court on Defendants Maximum Medical & Rehabilitation, LLC ("MMR") and Dr. James Morales' ("Dr. Morales," and together with MMR, "Defendants") motion to dismiss the Second Amended Complaint under Federal Rules of Civil Procedure 9(b) and 12(b)(6) (the "Motion"), (Dkt. No. 28). Plaintiff Aetna Life Insurance Company, Inc. ("Aetna" or "Plaintiff") opposed the motion, (Dkt. No. 33), and Defendants filed a reply in further support of their motion, (Dkt. No. 45). The Court reviewed the papers submitted and proceeds to rule without oral argument, pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, the motion will be **GRANTED** in part and **DENIED** in part.

**I.     PROCEDURAL HISTORY**

Plaintiff initiated this matter on November 7, 2024 alleging claims for (I) violating the New Jersey Insurance Fraud Prevention Act, (II) common law fraud, (III) negligent misrepresentation,

-1-

and (IV) unjust enrichment.  On December 18, 2024, Defendants filed a motion to dismiss and to stay discovery in this matter.  On January 8, 2025, Plaintiff filed an amended complaint (the "Amended Complaint") asserting the same four claims alleged in its initial complaint, (Dkt. No. 15).  On February 5, 2025, Defendants filed a motion to dismiss the Amended Complaint and stay discovery, (Dkt. No. 17).  Plaintiff filed an opposition to Defendants' motion on March 3, 2025, (Dkt. No. 21).  Defendants filed a reply brief in further support of their motion on March 10, 2025, (Dkt. No. 22).  The parties appeared before the Court to be heard on that motion on March 19, 2025.  On April 23, 2025, the Court entered an opinion and order granting the motion to dismiss the Amended Complaint under Rule 12(b)(6) without prejudice as to all Defendants, (Dkt. No. 24, the "Opinion & Order").

On May 23, 2025, Plaintiff filed a second amended complaint ("SAC") against Defendants asserting claims for: (I) violating the New Jersey Insurance Fraud Prevention Act against MMR; (II) common law fraud against MMR; (III) aiding and abetting insurance fraud against Dr. Morales; (IV) negligent misrepresentation against MMR; (V) unjust enrichment against Dr. Morales; and (VI) civil conspiracy against all Defendants.  (Dkt. No. 25 ("SAC").)  Defendants moved to dismiss the SAC on June 20, 2025.  (Dkt. No. 28 ("Mot.").)  Plaintiff filed an opposition to the Motion on July 21, 2025.  (Dkt. No. 33 ("Opp'n").)  Defendants filed a reply brief in further support of its Motion on August 4, 2025.  (Dkt. No. 45 ("Reply").)

Through their Motion, Defendants argue that the SAC should be dismissed in its entirety under Federal Rule of Civil Procedure 12(b)(6), and further, that each count should be dismissed for failing to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).

## II.  FACTUAL BACKGROUND

This case arises out of allegations that Defendants engaged in a fraudulent and/or improper billing scheme to recoup more than $500,000 in payments from Plaintiff by submitting claims that contained false or misleading information regarding "facility fees" that Defendants were not entitled to.

Aetna insures and administers commercial and governmental health benefit plans to private employers and government entities.  (SAC ¶ 19.)  Defendant MMR is a New Jersey limited liability company formed in 2019, and its sole member is an individual not named as a defendant in the SAC.  (Id. ¶¶ 9–11.)  Defendant Dr. Morales is a New Jersey-licensed physician, medical director for MMR, and a servicing/attending provider for MMR.  (Id. ¶ 12.)

To obtain payment for services from Plaintiff, healthcare providers, like Defendants, submit health insurance claims using "standard billing forms."  (Id. ¶ 20.)  These standard billing forms require providers to use numerical codes to describe "the basis for which the provider seeks payment."  (Id.)  Plaintiff uses billing forms to determine whether a claim is covered and if so, the appropriate amount of payment owed to the healthcare provider.  (Id. ¶ 21.)

At issue here are the "facility fees" Defendants allegedly charged to Plaintiff with its service bills.  A "facility fee" "consist[s] of fees charged, often by hospitals and hospital-based facilities (such as outpatient clinics that are owned by a hospital), and cover overhead costs such as equipment, space, and support staff."  (Id. ¶ 25.)  An Ambulatory Surgical Center ("ASC") is eligible for facility fees in certain conditions and facility fees "are usually only payable for ambulatory surgical centers if the center is 'licensed as an ambulatory surgical facility or whatever comparable title is used by the state's licensing law.'"  (Id. ¶ 26.)  The New Jersey Department of Health identifies "Ambulatory Surgery" as a type of facility and defines it as: "a surgical facility

in which ambulatory surgical cases are performed and which is licensed as an ambulatory surgery facility, separate and apart from any other facility license. (The ambulatory surgery facility may be physically connected to another licensed facility, such as a hospital, but is corporately and administratively distinct.)" (Id. ¶ 27.)

Starting in or around June 1, 2022 through at least June 2023, MMR began submitting claims to Plaintiff for professional fees (identifying Dr. Morales as the provider) and for separate facility fees. (Id. ¶ 28.) MMR submitted each facility claim as an ASC "type of bill," "which necessarily represented that professional services were provided in an ambulatory surgical center and sought a facility payment as an ASC." (Id. ¶ 29.) MMR has one licensed ASC that meets the State's definition that is located at 90 Route 10, West Succasunna, New Jersey 07876. (Id. ¶ 5.)

An "ASC type of bill" ("TOB") occurs when the first two numbers in the TOB code are "83." (Id. ¶ 30.) TOB codes consist of three numbers, but the first two numbers showing an ASC representation are material to Plaintiff. (Id.) Here, all of MMR's claims were 83 TOBs representing ASCs. (Id.)

MMR submitted all the relevant claims using either a UB-04 paper claim, or its electronic equivalent, an 837I. (Id. ¶ 31.) Plaintiff alleges that MMR repeated the misrepresentation that it provided reimbursable resources and/or services throughout its claims, including that MMR did not submit claims with the location where the actual service took place, but rather it submitted claims using the address of the "only MMR facility that has an Ambulatory Surgery facility license." (Id. ¶ 32.) Plaintiff also alleges that most of the disputed claims in this case "bear a POS code of 24 ("Surgery Center"), even though none of the treatment associated with the disputed claims was administered in an operating room or an ambulatory surgery center." (Id.) Plaintiff alleges that MMR's use of POS code 24 on its claims "was intended to mislead Aetna into

-4-

believing that services were actually being administered in a licensed surgery center and therefore a separate facility fee was warranted." (Id.) MMR also submitted claims for reimbursement that included revenue codes of 360 ("Operating Room Services") and 490 ("Ambulatory Surgery Care"). (Id.) Though these claims indicated that the services were being performed at a licensed ASC, Plaintiff alleges that on at least 550 separate occasions, the services were actually being provided in fitness centers, chiropractic offices, and physical therapy centers across the state. (Id. ¶¶ 33–34.)

Plaintiff alleges that MMR "only submitted false facility claims when Dr. Morales, its medical director, was the individual providing the professional service." (Id. ¶ 35.) Plaintiff alleges that MMR has "many providers working for it," but "only Dr. Morales' services resulted in false facility claims as he was performing services" at various addresses listed in the SAC. (Id. ¶ 37.) As medical director, Plaintiff alleges that Dr. Morales had the responsibility to ensure that MMR was billing for valid facility fees. (Id.) Plaintiff alleges that Dr. Morales knew of the fraudulent scheme due to his involvement in every fraudulent facility claim. (Id. ¶ 68.)

By using the address of MMR's licensed ASC and the above POS and revenue codes on their claims, Defendants were able to make it appear to Plaintiff, through the claims data MMR submitted to Plaintiff, that Defendants were entitled to separate facility fees. (Id. ¶¶ 38–42.)

Plaintiff, in relying on the contents of Defendants' claims, determined that Defendants' claims for separate facility fees were reimbursable, and reimbursed Defendants accordingly. Through this alleged scheme of submitting claims with deceptive codes, Plaintiff paid Defendants "at least $567,924.73" for facility fees they were not entitled to "in reasonable and foreseeable reliance upon the misrepresentations in the false health insurance claims they submitted." (Id. ¶ 45.)

### III.   LEGAL STANDARD

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  On a Rule 12(b)(6) motion, the Court must accept as true the well-pleaded facts of a complaint and any reasonable inference that may be drawn from those facts but need not credit conclusory statements couched as factual allegations.  See id. ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The issue before the Court on a Rule 12(b)(6) motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).  "[A] district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."  Id. at 1426.  The Court, however, may properly consider documents that form the basis of a claim and documents that are "integral to or explicitly relied upon in the complaint."  Id. (citations omitted).

Additionally, Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." To satisfy this requirement, a plaintiff may plead the "date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud."  Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir. 2004) (internal citations omitted),

abrogated in part on other grounds by Twombly, 550 U.S. at 557. "Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation." Id. This heightened pleading requirement gives "defendants notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits brought solely to extract settlements." In re Burlington Coat Factory Secs. Litig., 114 F.3d at 1418. "Plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible" because "boilerplate and conclusory allegations will not suffice." Id.

## IV.  DISCUSSION

### A. Rule 9(b)'s Heightened Pleading Standard Applies to All Claims

Defendants seek to dismiss all six causes of action alleged in the SAC for failure to satisfy Rule 9(b)'s heightened pleading requirement. Rule 9(b) applies to fraud-based claims such as Counts I and II because on their face, they are fraud claims. This heightened pleading standard, however, applies to the remaining claims because "Rule 9(b) also applies to claims under any legal theory whose supporting factual allegations 'sound in fraud.'" MHA, LLC v. Amerigroup Corp., 539 F. Supp. 3d 349, 360 (D.N.J. 2021) (quoting In re Suprema Specialties, Inc. Secs. Litig., 438 F.3d 256, 272 (3d Cir. 2006)). The Court will therefore determine whether Plaintiff adequately plead all six counts under Rule 9(b)'s heightened standard of review. See, e.g., Travelers Indem. Co. v. Cephalon, Inc., 620 F. App'x 82, 85 n.3 (3d Cir. 2015) ("[A]ll of Plaintiffs' claims alleging fraudulent activity—i.e., Plaintiffs' claims for intentional and negligent misrepresentation, unjust enrichment and an injunction—must be pled with sufficient particularity under Rule 9(b)."); Durr v. Mech. Constr., Inc. v. PSEG Fossil, LLC, 516 F. Supp. 3d 407, 419 (D.N.J. 2021) ("[W]hen a complaint incorporates fraud-like allegations (for example, that a defendant knowingly made a false statement), the claim may sound in fraud and be subject to Rule 9(b).").

### B. Claims Asserted Against MMR (Counts I, II, IV)

Defendants argue that the Counts asserted against MMR for violating the New Jersey Insurance Fraud Prevention Act ("NJIFPA") (Count I) and common law fraud (Count II) should be dismissed because they fail to meet the heightened pleading requirements of Rule 9(b) and otherwise fail to state a claim under Rule 12(b)(6) for the same reasons.

A person violates New Jersey's Insurance Fraud Prevention Act ("NJIFPA") if he or she:

> (1) Presents or causes to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy . . . knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim; or
>
> (2) Prepares or makes any written or oral statement that is intended to be presented to any insurance company, . . . knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim; or . . .
>
> b. . . . if he knowingly assists, conspires with, or urges any person or practitioner to violate any of the provisions of this act [or]
>
> c. . . . if, due to the assistance, conspiracy or urging of any person or practitioner, he knowingly benefits, directly or indirectly, from the proceeds derived from a violation of this act.

N.J.S.A. 17:33A-4(a)(1)–(2), (b), (c).

The NJIFPA essentially "prohibits the submission of insurance reimbursement claims when a party knows that the claim contains false or misleading information concerning any fact or thing material to the claim . . . ." Citizens United Reciprocal Exch. v. Meer, 321 F. Supp. 3d 479, 492–93 (D.N.J. 2018) (citing N.J.S.A. 17:33A-4); (see also SAC ¶¶ 48–49 (quoting N.J.S.A. 17:33A-4(a)(1)–(2), (b), (c)). To set forth a claim under the NJIFPA, a plaintiff must allege (1) knowledge, (2) falsity, and (3) materiality. See State Farm Guar. Ins. v. Tri-County Chiropractic & Rehab. Ctr., P.C., 2023 WL 4362748, at *9 (D.N.J. July 6, 2023) (citation omitted).

Upon review of the SAC, the Court finds that Plaintiff has adequately stated a claim for violating the NJIFPA under the pleading standards of both Rule 8(a)(2) and Rule 9(b). Here, there are well-pled allegations that MMR submitted insurance claims to Aetna for reimbursement of facility fees knowing that such claims contained false or misleading information. Unlike Plaintiff's first Amended Complaint, the SAC adequately explains to the Court what Exhibit B shows, namely, that most of the disputed claims bear a POS code of 24 ("Surgery Center") and TOB code of 83, which Plaintiff explains is an ASC representation. (See Compl. ¶¶ 29–30, 32.) Exhibit B also contains significantly more information than the exhibit filed with the first Amended Complaint. The Court also accepts as true for purposes of this Motion that the disputed claims bearing a POS code of 24 were not administered in an operating room nor an ASC, but rather in the specific fitness centers, chiropractic offices, and physical therapy centers Plaintiff identifies in the SAC. (Id. ¶¶ 32–33.) Although the locations listed are not presently tied into each specific claim, the SAC nevertheless tells the Court where the services were provided, which is sufficient to survive a motion to dismiss. As such, the Court finds that Plaintiff's amended pleading adequately explains why the numbers in Exhibit B are significant to the alleged fraud and how Plaintiff discovered the fraud was occurring from the representations MMR made in submitting those claims to Aetna.

The SAC also explains what Exhibits C and D represent and how Plaintiff obtained the information contained therein. (Id. ¶¶ 32, 36, 39–41.) For example, the SAC alleges that in Exhibit D, Dr. Morales performed services at 80 Kingsbridge Road, Piscataway, New Jersey and the Exhibit itself shows that the service code billed to Aetna was 490 and the POS code was 24. (Id.

¶ 36; Ex. D.) This Piscataway address is not a licensed ASC.[1] The SAC now explains what this data means and how Plaintiff discovered MMR's fraud. (See id. ¶¶ 39–41.)

With these detailed allegations, it is clear to the Court that Plaintiff has set forth a plausible claim for violating the NJIFPA. The SAC sufficiently alleges that the claims MMR submitted to Aetna were false in that they sought reimbursement for facility fees at specifically identified locations, that were not licensed ASCs, using a variety of codes that did not accurately reflect the services provided and the location where such services were provided. Plaintiff also adequately alleges that MMR's use of these codes was material because Plaintiff relied on these codes in issuing reimbursements to MMR for facility fees. Finally, under the circumstances alleged, MMR's knowledge can be inferred because an insurance provider would reasonably expect that a party submitting a claim for reimbursement at a specific facility would know what services were provided and what type of facility such services were provided at. See Allstate Ins. v. Northfield Med. Ctr., P.C., 228 N.J. 596, 620 (2017) ("There is ample precedent supporting the proposition that a party's knowledge as to the falsity or illegality of his conduct may be inferred from the surrounding factual circumstances."). The Court finds no present merit in Defendants' arguments regarding the applicable instructions for filling out UB-04 forms because the issue of which instruction applied to MMR at the time it submitted claims for reimbursement is an issue of fact that the Court will not decide on a motion to dismiss. Put simply, the SAC makes clear that MMR mispresented to Aetna, through the use of various false codes, that it was entitled to ASC facility fees—whether MMR correctly listed the address of the service provider or billing provider does

---

[1] Defendants' argument that Exhibit D is problematic because it is no longer a Retro Fitness is a non-sequitur. Exhibit D, itself, lists the "SRV PRV" as "PSCWAY MAXIMUM MEDICAL & REHABI." (SAC, Ex. D at 2.) And, as Plaintiff points out, no matter what name the facility at the Piscataway address has, the fact remains that the facility is not a licensed ASC and therefore is not entitled to the reimbursement of ASC facility fees.

not save Defendants' Motion.  Plaintiff's allegations therefore state a claim under the NJIFPA against MMR.

In New Jersey, a claim for common law fraud requires: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."  John Wiley & Sons, Inc. v. Rivadeneyra, 179 F. Supp. 3d 407, 411 (D.N.J. 2016).  For the same reasons the SAC states a claim for violating the NJIFPA, it too states a claim for common law fraud.  MMR made a material representation about the kinds of services and where such services were provided in the claims it submitted to Aetna for reimbursement.  As the party submitting the claims, it can be inferred that MMR had the requisite knowledge of the services provided and the facility where the services were provided.  By submitting the claims with specific codes for reimbursement, it is clear that MMR intended for Aetna to rely on the information and codes submitted so that it could be reimbursed accordingly.  It was reasonable for Aetna to rely on the particular codes submitted in determining whether to reimburse MMR for its requested facility fees and the damages here were the facility fees Aetna paid to MMR in an amount of at least $567,924.73.  Plaintiff sufficiently states a claim for common law fraud against MMR.

Defendants argue that Plaintiff's negligent misrepresentation claim (Count IV) fails because the facts alleged do not show that MMR made an incorrect statement to Aetna because MMR "never misrepresented the location of service for any claims." (Mot. at 22–23.)  For the reasons discussed, the Court disagrees.

A claim for negligent misrepresentation "requires a plaintiff to establish that defendant made an incorrect statement, upon which he or she justifiably relied, causing economic loss." Dist.

-11-

1199P Health and Welfare Plan v. Janssen, L.P., 784 F. Supp. 2d 508, 532 (D.N.J. 2011) (internal quotation marks and citation omitted).  MMR's use of various codes in the claims it submitted to Aetna for reimbursement represented to Aetna that services were rendered at a licensed ASC when they were rendered at other unlicensed MMR facilities.  Plaintiff has made a sufficient showing that MMR made incorrect statements upon which it relied in reimbursing MMR for at least $567,924.73 in facility fees MMR was not actually entitled to.  Plaintiff therefore has set forth a claim for negligent misrepresentation against MMR.

Defendants' Motion to Dismiss as to Counts I, II, and IV against MMR is denied.

### C.  Claims Asserted Against Dr. Morales (Counts III & V)

Defendants seek to dismiss the claims asserted against Dr. Morales for aiding and abetting insurance fraud (Count III) and unjust enrichment (Count V).

"[A] party may be held liable as an aider and abettor to a fraud where a plaintiff establishes the existence of an independent wrong, knowledge of that wrong and substantial assistance on the part of the aider or abettor to effectuate that wrong."  State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l, Inc., 387 N.J. Super. 469, 481–82 (N.J. App. Div. 2006) (citing cases).  Based on the facts alleged in the SAC, the Court is not convinced that the pleadings adequately state a claim against Dr. Morales.  Plaintiff cites to paragraphs 34, 35, 37, and 66 of its SAC to argue that its allegations against Dr. Morales are sufficient under Rule 9(b).  (See Opp'n at 21–22.)  As related to Dr. Morales' individual conduct, those paragraphs allege that MMR and Dr. Morales "submitted claims to Aetna certifying that the services were being conducted at a licensed ASC and it was entitled to payment on that basis," (SAC ¶ 34), Dr. Morales, the medical director, was the individual providing the professional service on the claims MMR submitted, (id. ¶ 35), "only Dr. Morales' services resulted in false facility claims as he was performing services

at the above addresses," (id. ¶ 37), "Dr. Morales is MMR's Medical Director with the responsibility to ensure that MMR was billing for valid facility fees, especially given that he was the actual individual providing these services," (id.), and "Dr. Morales was the servicing/attending provider who provided the underlying services for every fraudulent facility claims submitted by MMR," (id. ¶ 66).

The allegation that Dr. Morales was the only treating physician whose services ended up on the fraudulent claims for facility fees here falls short of establishing that Dr. Morales aided and abetted MMR's fraud. So too do the allegations related to Dr. Morales' role as medical director. For example, other than the sole allegation that Dr. Morales had "the responsibility to ensure that MMR was billing for valid facility fees," (id. ¶ 37), there are no allegations that he was responsible for MMR's billing practices nor are there any allegations as to MMR's billing practices in general. The remainder of the SAC alleges that MMR submitted claims to Aetna, with no information on who specifically was responsible for submitting claims, and with no allegation that it was, in fact, Dr. Morales. Indeed, in a footnote to paragraph 35, Plaintiff alleges that: "The fraud is that *MMR asserted* Dr. Morales' professional services were done in an ASC when they were actually being performed at a Retro Fitness." (Id. ¶ 35 n.2 (emphasis added).) Considering allegations like this with the facts that MMR received the facility fees at issue here and that Plaintiff does not take issue with the professional fees Dr. Morales received, the Court cannot conclude that the facts alleged meet the heightened pleading standard of Rule 9(b) for the claims asserted solely against Dr. Morales. Without facts to show how Dr. Morales specifically aided MMR in submitting fraudulent claims for facility fees, the Court must dismiss Plaintiff's aiding and abetting claim against Dr. Morales without prejudice.

Next, Defendant argues that the unjust enrichment claim against Dr. Morales should also be dismissed because the subject benefits were paid to MMR, not to Dr. Morales. (See Mot. at 23–25.) The Court agrees.

To establish a claim for unjust enrichment under New Jersey law, a plaintiff must establish "both that defendant received a benefit and that retention of that benefit without payment would be unjust." MK Strategies, LLC v. Ann Taylor Stores Corp., 567 F. Supp. 2d 729, 733 (D.N.J. 2008) (quoting VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994)). "Unjust enrichment is not an independent theory of liability, but is the basis for a claim of quasi-contractual liability." Id. (quoting Nat'l Amusements, Inc. v. N.J. Turnpike Auth., 261 N.J. Super. 468, 619 (Law Div. 1992), aff'd, 275 N.J. Super. 134 (App. Div. 1994)).

Here, there is no allegation that Dr. Morales received a benefit. Further, the Court's dismissal of Dr. Morales' aiding and abetting claim causes the unjust enrichment claim to fail. See, e.g., Burrell v. Staff, 60 F.4th 25, 50 (3d Cir. 2023) ("[W]here the unjust enrichment claim rests on the same improper conduct as the underlying tort claim, the unjust enrichment claim will rise or fall with the underlying claim."). The unjust enrichment claim against Dr. Morales is therefore dismissed without prejudice.

To the extent Plaintiff seeks to hold MMR liable for unjust enrichment, the Court will allow the claim to proceed along with the other claims asserted against MMR because they rest on the same improper conduct. See id. The SAC makes clear by Plaintiff's use of the word "Defendants" throughout its allegations related to the unjust enrichment claim that it likely intended to assert this claim against both MMR and Dr. Morales, and Plaintiff's opposition brief argues that the "claim for unjust enrichment should proceed against both [Dr. Morales] and MMR." (See SAC ¶¶ 80–85; Opp'n at 23.)

The Court therefore will grant Defendants' Motion as to Counts III and V asserted against Dr. Morales but will deny Defendants' Motion as to Count V to the extent Plaintiff seeks to hold MMR liable for unjust enrichment.

### D.  Claim Asserted Against Both MMR and Dr. Morales (Count VI)

Defendants seek to dismiss Plaintiff's final cause of action for civil conspiracy (Count VI) asserted against both MMR and Dr. Morales.  A civil conspiracy under New Jersey law is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, a principal element of which is to inflict a wrong against or injury upon another, and an overt act that results in damage."  John Wiley & Sons, 179 F. Supp. 3d at 411–12 (quoting Banco Popular N. Am. v. Gandi, 184 N.J. 161, 177 (2005)).  As no claims remain against Dr. Morales, Plaintiff's civil conspiracy claim must be dismissed because a conspiracy cannot exist with only one party.

Defendants' Motion to Dismiss Plaintiff's civil conspiracy claim (Count VI) is therefore granted.

\*     \*     \*

For these reasons,

**IT IS** on this 2nd day of September, 2025

**ORDERED** that the Motion to Dismiss the Second Amended Complaint, (Dkt. No. 28), under Federal Rule of Civil Procedure 12(b)(6) is **DENIED** as to Counts I, II, IV, and V against Defendant MMR; and it is further

**ORDERED** that the Motion to Dismiss the Second Amended Complaint, (Dkt. No. 28), under Federal Rule of Civil Procedure 12(b)(6) as to Counts III and V against Defendant Dr. James Morales is **GRANTED** without prejudice; and it is further

**ORDERED** that the Motion to Dismiss the Second Amended Complaint, (Dkt. No. 28), under Federal Rule of Civil Procedure 12(b)(6) as to Count VI against Defendant MMR and Defendant Dr. James Morales is **GRANTED** without prejudice.


           *s/ Stanley R. Chesler*
           STANLEY R. CHESLER, U.S.D.J.